UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

KEVIN FRIEDMAN, VIJAY PATEL,
JONATHAN SCHOEFF, MICHAEL SCHOEFF,
and GEORGE SKAFF,

      Plaintiffs,

v.                                    Case No.:

DAVID HAMMER; MITCHELL HAMMER;
GHEN SUGIMOTO; DIANE SUGIMOTO;
TRC FUNDING GROUP NO. 1, LLC; and
SMART LEGAL SOLUTIONS, LLC

      Defendants.

_____/

## COMPLAINT

      Plaintiffs, Kevin Friedman, Vijay Patel, Jonathan Schoeff, Michael Schoeff, and George

Skaff (collectively "Plaintiffs"), bring this action against Defendants, Mitchell A. Hammer,

David E. Hammer, Diane Sugimoto, Ghen Sugimoto, TRC Funding Group No. 1, LLC, and

Smart Legal Solutions, LLC (collectively "Defendants") and allege:

### Parties and Jurisdiction

      1.      This is an action for damages against Defendants for violation of Section 10(b) of

the Securities and Exchange Act of 1934, 15 U.S.C. § 77 and Rule 10b-5 promulgated by the

United States Securities and Exchange Commission, codified at 17 C.F.R. section 240.10b-5,

violation of the Florida Securities and Investor Protection Act, Fla. Stat. § 517.301, Fraudulent

Inducement, and Negligent Misrepresentation.

      2.      Plaintiff Kevin Friedman is a citizen of Georgia.

      3.      Plaintiff Vijay Patel is a citizen of Florida.

      4.      Plaintiff Jonathan Schoeff is a citizen of Colorado.

5.      Plaintiff Michael Schoeff is a citizen of Ohio.

6.      Plaintiff George Skaff is a citizen of Ohio.

7.      Defendant Mitchell A. Hammer is a citizen of Florida.

8.      Defendant David E. Hammer is a citizen of Florida.

9.      Defendant Diane Sugimoto is a citizen of Florida.

10.     Defendant Ghen Sugimoto is a citizen of Florida.

11.     Defendant TRC Funding Group No. 1, LLC ("TRC Funding") is a limited liability company formed under the laws of Florida.  Upon information and belief, the members of TRC Funding are Hammer Capital Group, LLC and Taisho Investments, LLC, which are both limited liability companies formed under the laws of Florida.  Upon information and belief, the member of Hammer Capital Group, LLC is Defendant David Hammer.  Upon information and belief, the member of Taisho Investments, LLC is Defendant Ghen Sugimoto.  Therefore, Defendant TRC Funding is a citizen of Florida.  Defendant TRC Funding's principal address is 1000 Corporate Drive, Suite 610, Ft. Lauderdale, Florida 33334.  It may be served at its registered agent for service of process, Mitchell Hammer, at 1000 Corporate Drive, Suite 610, Ft. Lauderdale, Florida 33334.

12.     Defendant Smart Legal Solutions, LLC ("Smart Legal") is a limited liability company formed under the laws of Florida.  Upon information and belief, the members of Smart Legal are Defendants David Hammer and Ghen Sugimoto.  Therefore, Defendant Smart Legal is a citizen of Florida. Defendant Smart Legal's principal address is 1000 Corporate Drive, Suite 610, Ft. Lauderdale, Florida 33334.  It may be served at its registered agent for service of process, Mitchell Hammer, at 1000 Corporate Drive, Suite 610, Ft. Lauderdale, Florida 33334.

13.     This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331, based upon Plaintiffs' claims under the Securities and Exchange Act of 1934, 15 U.S.C. § 78, Rule 10b-5, 17 C.F.R. § 240.10b-5.  Federal courts have exclusive jurisdiction over violations of the Securities and Exchange Act of 1934. 15 U.S.C. § 78aa.

14.     This Court has pendant jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

15.     Personal jurisdiction is proper over the Defendants because they reside in the State of Florida and a substantial part of the events giving rise to this controversy occurred in Florida.

16.     Venue is proper in the Southern District of Florida under 28 U.S.C. § 1391(b)(2) because the acts and omissions giving rise to the claims alleged herein occurred in this judicial district.

17.     In connection with the acts alleged in this Complaint, Defendants used or caused to be used the means and instrumentalities of interstate commerce, including but not limited to email, mail and interstate telephone communications.

**<u>Allegations Applicable to All Counts</u>**

18.     Defendants engaged in a plan, scheme, and course of conduct, pursuant to which they knowingly engaged in acts, transactions and business practices which operated to defraud and deceive Plaintiffs.  As set forth herein, Defendants made various untrue statements of material facts and omitted to state other material facts which, had those facts been disclosed, would have revealed the fraud being committed by Defendants.

19.     In or about January, 2017, Defendant Ghen Sugimoto approached Plaintiff Kevin Friedman with an "investment opportunity" which he claimed was "guaranteed."  A few days

later, Plaintiff Kevin Friedman spoke with Defendant Diane Sugimoto about the "opportunity," who reiterated the statements made by Ghen Sugimoto. These two Defendants, along with Mitchell Hammer, on numerous occasions represented that the investment had "zero risk," and Plaintiff Kevin Friedman relied upon said representations.  Defendant Ghen Sugimoto was Plaintiff Kevin Friedman's childhood friend, and Defendant Diane Sugimoto is Ghen Sugimoto's mother.  Plaintiff Kevin Friedman had known Defendants Ghen Sugimoto and Diane Sugimoto almost his entire life, and had the utmost trust in their representations that the investment was "zero risk"  Plaintiff Kevin Friedman considered Defendant Ghen Sugimoto one of his best friends.  In reasonable reliance on Defendants' representations, Plaintiff Kevin Friedman informed the other plaintiffs of the investment opportunity. Ghen and Diane represented they had multiple millions of dollars of their own funds invested in the existing cases.  Further, they stated they had sold a previous group of cases to the Akin Mears law firm for $40 million and these new cases were worth tens of millions of dollars.   Further, they stated there was *no chance* that they would not be able to meet their commitment to payback the investors' capitol as promised at the year mark from investing with absolute certainty.

20.     Defendants David Hammer, Mitchell Hammer, Diane Sugimoto and Ghen Sugimoto represented to Plaintiffs that their investment would fund litigation of products liability cases for clients of attorney Lonny Bramzon ("Bramzon") and his law firm, Bramzon & Associates Specialty Litigation, LLC ("BASL"). Plaintiff Kevin Friedman has also known Bramzon since childhood and was a close friend with Bramzon.  Bramzon told Plaintiff Kevin Friedman that he strongly believed in this business model and that Bramzon's brother, also an attorney, had reviewed and vouched for the legality of the business model.   Additionally,

Bramzon and Defendant Diane Sugimoto assured Plaintiff Kevin Friedman that the Plaintiffs had hired outside attorneys to review the business model, and that they approved of the model.

21.     Defendants David Hammer, Mitchell Hammer, Diane Sugimoto and Ghen Sugimoto represented to Plaintiffs that BASL had a docket of approximately 12,500 transvaginal mesh cases and 2,500 other cases, including but not limited to Xarelto, Pradaxa, Risperdal, IVC blood clot filter, Talc Powder, Invokana, and Benicar, thousands of which were in various stages of the settlement process for its clients.

22.     Defendants David Hammer, Mitchell Hammer, Diane Sugimoto, and Ghen Sugimoto further represented to Plaintiffs that tens of millions of dollars in settlement proceeds from these thousands of products liability cases would be available and would be utilized to pay back Plaintiffs' initial investment in a year, which would more than double their investments within 2 to 3 years. Defendants repeatedly informed Plaintiffs that this was a "zero risk" investment.

23.     Defendants' representations were false.   Defendants intentionally failed to disclose the true nature and character of the investment, including but not limited to inflating the number of viable cases from which the settlement proceeds would be paid, and the speed with which the cases would resolve.

24.     In or about September 2016, just months before Plaintiffs were defrauded into investing several million dollars, unbeknownst to Plaintiffs, Defendant Mitchell Hammer recognized that their "operation" of obtaining settlement proceeds was not stable, that they were in significant debt and that they needed "capital" to continue the "operation."

25.     To facilitate Defendants' fraudulent investment scheme, on or about January 1, 2017, Defendants David Hammer and Ghen Sugimoto formed Defendants Smart Legal, and TRC

Funding, both of which are Florida limited liability companies. Defendants David Hammer and Ghen Sugimoto are the members of Smart Legal and TRC Funding.

26.     Due to the instability of the operation and their need of capital, Defendants induced Plaintiffs, through their misrepresentations of the true nature and character of the investments, to invest in TRC Funding.

27.     Defendant Smart Legal prepared a private placement memorandum, attached as **Exhibit 1**, which offered preferred units of membership in Defendant TRC Funding in exchange for cash investment.  The Private Placement Memorandum stated, in part, that TRC Funding was "offering investors an opportunity to purchase up to three hundred (300) Preferred Units for three million U.S. dollars (US $3,000,000) in the aggregate which they will purchase for ten thousand U.S. dollars (US $10,000) per Preferred Unit."

28.     Defendants David Hammer, Mitchell Hammer, Diane Sugimoto and Ghen Sugimoto, in their own self-interests and on behalf of Defendants Smart Legal and TRC Funding, represented to Plaintiffs that settlement proceeds from the thousands of products liability cases would be available to redeem the preferred units of membership in TRC Funding (and thereby provide Plaintiffs with a return on their investment), according to schedules set forth in the private placement memorandum.  The first group of Units was to be redeemed by TRC Funding "no later than twelve (12) months and one (1) day from the date the investor's subscription is accepted by the Company."

29.     Defendants David Hammer, Mitchell Hammer, Diane Sugimoto and Ghen Sugimoto, in their own self-interests and on behalf of Defendants Smart Legal and TRC Funding, represented to Plaintiffs that their investment would go toward processing and funding the products liability cases to obtain settlement proceeds, and that TRC Funding was part of a

group of several affiliate companies (the "Group"), many of which were Smart Legal's subsidiaries, that had combined their efforts and resources to become one of the largest providers of legal case processing and plaintiff support services.

30.     The private placement memorandum specifically represented that the "net proceeds realized from this Offering will be used by the Company for working capital and to finance the administrative and case management costs of plaintiffs' mass tort cases."  This was false.

31.     Despite their awareness that the "operation" was not stable, Defendants David Hammer, Mitchell Hammer, Diane Sugimoto and Ghen Sugimoto, in their own self-interests and on behalf of Defendants Smart Legal and TRC Funding, falsely represented to Plaintiffs that investment in TRC Funding would generate substantial returns based on the Group's detailed plans for using the capital to develop and prove thousands of products liability cases using, among other things, the Group's marketing strategies, technology platforms, vendor relationships, processes for case management, and fee agreements with BASL and its co-counsel for the cases.

32.     Defendants David Hammer, Mitchell Hammer, Diane Sugimoto and Ghen Sugimoto, in their own self-interests and on behalf of Defendants Smart Legal and TRC Funding, falsely represented to Plaintiffs that the Group had developed a system for vetting products liability cases and generating an internal rate of return of more than 240% within 12 months.

33.     Defendants David Hammer, Mitchell Hammer, Diane Sugimoto and Ghen Sugimoto, in their own self-interests and on behalf of Defendants Smart Legal and TRC Funding, represented to Plaintiffs that Defendant David Hammer earned a Juris Doctorate and

Master of Laws in Taxation from University of Florida and that his four years of law practice led him to a career in business. Defendants failed to disclose that in Defendant David Hammer's four years of law practice he was once reprimanded, twice suspended, and ultimately disbarred by the Florida Bar.

34.    Defendants David Hammer, Mitchell Hammer, Diane Sugimoto and Ghen Sugimoto, in their own self-interests and on behalf of Defendants Smart Legal and TRC Funding, failed to disclose to Plaintiffs at the time of their investments that Defendant David Hammer's father, Defendant Mitch Hammer, had been criminally convicted of violating securities laws and would be involved in the management of TRC Funding.

35.    Defendants David Hammer, Mitchell Hammer, Diane Sugimoto and Ghen Sugimoto, in their own self-interests and on behalf of Defendants Smart Legal and TRC Funding, falsely represented to Plaintiffs that TRC had no private or institutionalized debts, and failed to disclose to Plaintiffs that TRC Funding's assets were encumbered by more than $8 million of indebtedness. As a result of this indebtedness, Defendants were forced to sell the proceeds of over 4000 cases (which defendants represented would be used to redeem Plaintiffs' investment) to pay down the debt.

36.    Defendants David Hammer, Mitchell Hammer, Diane Sugimoto and Ghen Sugimoto, in their own self-interests and on behalf of Defendants Smart Legal and TRC Funding, failed to disclose to Plaintiffs that a former vendor's claims against TRC Funding would affect TRC Funding's ability to perform its financial obligations and make the payments required to redeem the preferred units of membership in TRC Funding according to the schedules set forth in the private placement memorandum.

37.     Defendants David Hammer, Mitchell Hammer, Diane Sugimoto and Ghen Sugimoto, in their own self-interests and on behalf of Defendants Smart Legal and TRC Funding, participated in numerous telephone conferences with one or more of the Plaintiffs to promote their investment in TRC Funding.  However, Defendants repeatedly assured Plaintiffs that the investments were "zero risk."

38.     During these telephone conferences, Defendants David Hammer, Mitchell Hammer, Diane Sugimoto and Ghen Sugimoto, in their own self-interests and on behalf of Defendants Smart Legal and TRC Funding, made misrepresentations and omissions, and concealed material information about the nature of the investment, including the number of viable cases that would generate settlement funds, the amounts of settlement funds available.

39.     Defendants David Hammer, Mitchell Hammer, Diane Sugimoto and Ghen Sugimoto, in their own self-interests and on behalf of Defendants Smart Legal and TRC Funding, further made misrepresentations regarding and TRC Funding and the circumstances relating to TRC Funding's ability to perform its financial obligations and make the payments required to redeem the preferred units of membership in TRC Funding.

40.     Defendants knew or should have known that all of the foregoing representations were false and that all of the foregoing omissions were material to Plaintiffs' decision to purchase preferred units of membership in TRC Funding.

41.     The private placement memorandum, on page fifteen (15) purports to outline certain "risk factors" associated with the investment.  While the language in the private placement memorandum may have suggested that the investment carried some risk, it did not warn or inform the Plaintiffs that the entire scheme was fraudulent.  As part of their fraudulent

scheme, Defendants repeatedly represented to Plaintiffs that there was "zero" risk associated with the investment.

42.     Defendants intended for Plaintiffs to rely, and knew that Plaintiffs would rely, on the representations and omissions made by Defendants. Defendants David Hammer, Mitchell Hammer, Diane Sugimoto and Ghen Sugimoto, in their own self-interests and on behalf of Defendants Smart Legal and TRC Funding, made such misrepresentations with the intention to induce Plaintiffs into purchasing millions of dollars of preferred units in TRC Funding, which they had formed to facilitate the scheme.

43.     Plaintiffs relied on the foregoing representations, and were not aware of the foregoing omissions, when Plaintiffs accepted the offering in the private placement memorandum and purchased preferred units of membership in TRC Funding in 2017, as follows:

> a.   Plaintiff Kevin Friedman: $875,000.00 ($250,000.00 in February 2017; $600,000.00 in April 2017; and $25,000.00 in August 2017);
>
> b.   Plaintiff Vijay Patel: $1,000,000.00 ($500,000.00 in September 2017 and $500,000.00 in January 2018);
>
> c.   Plaintiff George Skaff: $100,000.00 (in September 2017);
>
> d.   Plaintiff Michael Schoeff: $750,000.00 ($500,000.00 in February 2017 and $250,000.00 in August 2017)
>
> e.   Plaintiff Jonathan Schoeff: $400,000.00 ($250,000.00 in January 2017 and $150,000.00 in August 2017)

44.     During or about the time of their initial investments, in reliance on the misrepresentations of the Defendants, Plaintiffs entered into Subscription Agreements to

purchase the units of TRC Funding.  The Subscription Agreements were signed on behalf of TRC Funding by Defendant Ghen Sugimoto and David Hammer, as managers of the company.

45.     During or about February of 2017, Bramzon, acting as the sole manager and stakeholder of BASL, entered into a Guaranty in which BASL agreed to perform all of TRC Funding's financial obligations to each Plaintiff to the same extent and with the same force and effect as if BASL was the issuer of the private placement memorandum for TRC Funding.  Mr. Bramzon entered into a second Guaranty on or about April 2017.  True and correct copies of these Guarantees are attached hereto as **Exhibit 2.**

46.     During or around April, 2017, Defendant Mitchell Hammer, individually, entered into a Guaranty in which Mitchell Hammer agreed to perform all of TRC Funding's financial obligations to Plaintiff Kevin Friedman to the same extent and with the same force and effect as if Mitchell Hammer was the issuer of the private placement memorandum for TRC Funding. Such was done by defendant Mitchell Hammer to induce a subsequent investment from Plaintiff Kevin Friedman, said total investment of Plaintiff Kevin Friedman being $875,000.  A true and correct copy of the Guaranty is attached hereto as **Exhibit 3.**

47.     During or around August 2017, defendants Ghen Sugimoto, Mitchell Hammer and David Hammer, joint and severally, entered into a Guaranty in which they assumed full responsibility for financial performance by TRC Funding under the Private Placement Memorandum and Michael Schoeff's Subscription Agreement, to redeem the Units purchased by Michael Schoeff for four hundred thousand dollars ($400,000.00).  A true and correct copy of the Guaranty is attached hereto as **Exhibit 4.**  This Guaranty was expressly given "in order to induce Michael Schoeff . . . to enter into that certain Private Placement Memorandum dated January 31, 2017 with TRC Funding Group No. 1. LLC. . ."

11

48.     Under the Guaranty, Ghen Sugimoto, Mitchell Hammer and David Hammer expressly agreed to pay Michael Schoeff "all expenses" arising out of any action, litigation or proceeding to enforce the terms of the Guaranty, including but not limited to court costs and all attorneys' fees incurred by Michael Schoeff. Under the Guaranty, Ghen Sugimoto, Mitchell Hammer and David Hammer were required to notify Michael Schoeff within thirty (30) business days if TRC Funding raised additional capital, if repayment of the subsequently raised capital would have a payment preference or priority of any kind. . ."

49.     Bramzon and BASL, and Ghen Sugimoto, Mitchell Hammer and David Hammer provided Plaintiffs with the Guarantees and private placement memorandum to induce Plaintiffs' investment and obtain funding for litigation of products liability cases for clients of Bramzon and BASL. Defendants both intended for Plaintiffs to rely, and knew that Plaintiffs would rely, on the false representations made therein. The Guarantees were to further falsely reassure Plaintiffs that the investment was "zero risk."

50.     Defendants Ghen Sugimoto, Mitchell Hammer and David Hammer, along with BASL, never intended to abide by their Guarantees. Indeed, Defendant Mitchell Hammer knew that he was "over-extended" on guarantees, and that investors would have to get in line to collect based on the Guaranty.

51.     TRC Funding has failed and refused to perform its financial obligations to Plaintiffs and has not made any of the payments required to redeem the preferred units of membership in TRC Funding according to the schedules set forth in the private placement memorandum.

52.     BASL and Defendants Ghen Sugimoto, Mitchell Hammer and David Hammer have failed to perform all of their financial obligations to Plaintiffs and have not made any of the

payments required to redeem the preferred units of membership in TRC Funding according to schedules set forth in the private placement memorandum.

53.     During or around the spring of 2017, after investing in TRC Funding, Plaintiff Kevin Friedman learned that Defendant David Hammer had been disbarred after only four years of practicing law, and that Defendant Mitchell Hammer had been convicted of violating securities laws.  Plaintiff Kevin Friedman confronted Defendants Diane Sugimoto and Ghen Sugimoto, along with Bramzon, who repeatedly assured him that Defendants David and Mitchell Hammer were "great people" who had made mistakes in the past, and that their pasts did not impact the investment.  Plaintiff Kevin Friedman thereafter had a phone call with Defendant Mitchell Hammer, who once again reassured Plaintiff Kevin Friedman that his past would not impact the investment.  Plaintiff Kevin Friedman was assured by the individual defendants that he could expect trust and confidence in the integrity of Defendants David Hammer and Mitchell Hammer.  Plaintiffs Michael Schoeff, Jonathan Schoeff, George Skaff, and Vijay Patel were not aware of these conversations Plaintiff Kevin Friedman had with the individual defendants.

54.     The criminal and unethical backgrounds of Defendants David Hammer and Mitchell Hammer were material facts that would have substantially impacted Plaintiffs' decision to invest in TRC Funding, especially given that the criminal conduct involved securities fraud.

55.     After their misrepresentations induced Plaintiffs to invest in TRC Funding, Defendants David Hammer, Mitchell Hammer, Diane Sugimoto and Ghen Sugimoto, in their own self-interests and on behalf of Defendants Smart Legal and TRC Funding, continued to misrepresent TRC Funding's ability to redeem the units as set forth in the private placement memorandum.  Defendants repeatedly misrepresented the status of the settlements and failed to disclose other debts owed by TRC Funding.  Defendants repeatedly and falsely assured Plaintiffs

that they would receive a return on their investments as promised and as set forth in the private placement memorandum. Due to the fraudulent concealment of the true nature of the investment in TRC Funding by Defendants David Hammer, Mitchell Hammer, Diane Sugimoto and Ghen Sugimoto, for their own self-interests and on behalf of Defendants TRC Funding and Smart Legal, Plaintiffs did not know the true facts and had no reason to believe otherwise.

56.     Defendants' representations were false, as they never intended to return any of the Plaintiffs' investments.

57.     Rather, Defendants David Hammer, Mitchell Hammer, Diane Sugimoto and Ghen Sugimoto, in their own self-interests and on behalf of Defendants Smart Legal and TRC Funding, have used the Plaintiffs' investments in TRC Funding to, among other things: (1) fund a number of other companies owned by the Defendants; (2) fund BASL; (3) make deposits into various members Defendants' personal accounts; and (4) make deposits into various personal and business accounts unrelated and unaffiliated with the Defendants or Bramzon and BASL.

**Count I**
**Violation of Section 10(b) of the**
**1934 Securities and Exchange Act and Rule 10b-5 (17 C.F.R. § 240.10B-5)**

58.     Plaintiffs reallege paragraphs 1– 57.

59.     This is a claim for damages against Defendants for violation of Section 10(b) of the 1934 Securities and Exchange Act, 15 U.S.C. § 77 and Rule 10b-5, codified at 17 C.F.R. section 240.10b-5.

60.     Defendants employed a fraudulent scheme whereby their misrepresentations and omissions of material facts to Plaintiffs relating to the private placement memorandum, the Guarantees, and TRC Funding induced Plaintiffs to invest more than $3 million in TRC Funding.

14

61.     As set forth in paragraphs 18-53 above, in relation to the sale of securities, Defendants used means or instrumentalities of interstate commerce, including but not limited to the mails and telephone communications, to engage in acts, practices or courses of business which operated as a fraud and deceit upon Plaintiffs.

62.     Defendants' intentional misrepresentations included, but were not limited to: (1) that BASL had a docket of approximately 15,000 cases; (2) that settlement proceeds from these cases would be available to redeem the preferred units of membership in TRC Funding within one year; (3) that investment in TRC Funding would generate substantial returns on Plaintiffs' investments; (4) that the Group had developed a system to generate a return of more than 240% on Plaintiffs' investments within 12 months;  (5) that Plaintiffs' investments in TRC Funding would be used to fund litigation of products liability cases for clients of Bramzon and BASL; (6) they would guarantee that TRC Funding would redeem the units as set forth in the private placement memorandum and that the Plaintiffs would otherwise be paid back; and (7) that the cases would generate tens of millions of dollars in the next year, the same to be realized by Plaintiffs

63.     Defendants' intentional material omissions included, but were not limited to: (1) that Defendant David Hammer had been disbarred; (2) that Defendant Mitchell Hammer had been criminally convicted of violating securities laws and would be involved in the management of TRC Funding; (3) that TRC Funding's assets were substantially encumbered; and (4) that a former vendor's claims against TRC Funding would materially affect TRC Funding's ability to perform its financial obligations.

64.     Defendants' material representations to Plaintiffs were untrue, and Defendants' omissions of material facts were necessary so that Defendants' misrepresentations to Plaintiffs appeared to be not misleading.

65.     The Defendants' untrue statements of material facts and omissions alleged herein were made with the intention of inducing, and did thereby induce, Plaintiffs to purchase the units of TRC Funding.

66.     Defendants knew that Plaintiffs relied upon their material misrepresentations and omissions in making the decision to invest millions of dollars in TRC Funding.

67.     In reasonable reliance on Defendants' misrepresentations and omissions, Plaintiffs invested over three million dollars ($3,000,000.00) in units of TRC Funding in 2017 and 2018, as follows:

     a.   Plaintiff Kevin Friedman: $875,000.00

     b.   Plaintiff Vijay Patel: $1,000,000.00

     c.   Plaintiff George Skaff: $100,000.00

     d.   Plaintiff Michael Schoeff: $750,000.00

     e.   Plaintiff Jonathan Schoeff: $400,000.00

68.     The securities (i.e., the units of TRC Funding) that are the subject of the private offering memorandum and the Subscription Agreements were not registered under the 1933 Federal Securities Act.

69.     Plaintiffs would not have agreed to purchase the securities and invest in TRC Funding but for Defendants' misleading statements and failure to disclose material facts.

70.     Defendants' material misstatements and omissions were committed with scienter, as Defendants knew their scheme was unstable and they needed capital. Defendants repeatedly

and intentionally misrepresented the true nature of the investment to Plaintiffs, to induce them to invest so that Defendants could use the investment funds for their own personal uses as alleged above. Defendants' scienter is further demonstrated by Defendants' concealment of their fraud, and repeated assurances that the investment was "zero risk."

71.    As a direct and proximate result of Defendants' intentional wrongful conduct, Plaintiffs suffered damages in connection with the purchase of preferred membership interests in TRC Funding.

72.    Defendants' conduct was willful, malicious, oppressive, and/or reckless, and was of such nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for damages, including punitive damages, attorneys' fees, costs and any further relief this Court deems proper.

### Count II
### Violation of the Florida Securities Investor Protection Act,
### Section 517.301, Florida Statutes

73.    Plaintiffs reallege paragraphs 1-57.

74.    This is a claim for damages against Defendants for violation of Florida's Securities and Investor Protection Act, Section 517.301, Florida Statues.

75.    Defendants employed a fraudulent scheme whereby their misrepresentations and omissions of material facts to Plaintiffs relating to the offer and sale of securities (i.e. the Units of TRC Funding as set forth in the private placement memorandum) induced Plaintiffs to invest more than $3 million in TRC Funding. Defendants owed Plaintiffs a duty to ensure that full and

fair disclosures were made in connection with the securities offered to Plaintiffs in the private placement memorandum.

76.     Defendants' intentional misrepresentations included, but were not limited to: (1) that BASL had a docket of approximately 15,000 cases; (2) that settlement proceeds from these cases would be available to redeem the preferred units of membership in TRC Funding within one year; (3) that investment in TRC Funding would generate substantial returns on Plaintiffs' investments; (4) that the Group had developed a system to generate a return of more than 240% on Plaintiffs' investments within 12 months;  (5) that Plaintiffs' investments in TRC Funding would be used to fund litigation of products liability cases for clients of Bramzon and BASL; and (6) they would guarantee that TRC Funding would redeem the units as set forth in the private placement memorandum, and that the Plaintiffs would otherwise be paid back; and (7) that the cases would generate tens of millions of dollars in the next year, the same to be realized by Plaintiffs

77.     Defendants' intentional material omissions included, but were not limited to: (1) that Defendant David Hammer had been disbarred; (2) that Defendant Mitch Hammer had been criminally convicted of violating securities laws and would be involved in the management of TRC Funding; (3) that TRC Funding's assets were substantially encumbered; and (4) that a former vendor's claims against TRC Funding would materially affect TRC Funding's ability to perform its financial obligations.

78.     Defendants' material representations to Plaintiffs were untrue, and Defendants' concealment of material facts were necessary so that Defendants' misrepresentations to Plaintiffs appeared to be not misleading.

79.     The Defendants' untrue statements of material facts and omissions alleged herein were made with the intention of inducing, and did thereby induce, Plaintiffs to purchase the units of TRC Funding.

80.     Defendants knew that Plaintiffs relied upon their material misrepresentations and omissions in making the decision to invest millions of dollars in TRC Funding.

81.     In reasonable reliance on Defendants' misrepresentations and concealment, Plaintiffs invested over three million dollars ($3,000,000.00) in units of TRC Funding in 2017 and 2018, as follows:

> a.   Plaintiff Kevin Friedman: $875,000.00
>
> b.   Plaintiff Vijay Patel: $1,000,000.00
>
> c.   Plaintiff George Skaff: $100,000.00
>
> d.   Plaintiff Michael Schoeff: $750,000.00
>
> e.   Plaintiff Jonathan Schoeff: $400,000.00

82.     Plaintiffs would not have agreed to purchase the securities and invest in TRC Funding but for Defendants' misleading statements and failure to disclose material facts.

83.     Defendants' material misstatements and omissions were committed with scienter, as Defendants knew their scheme was unstable and they needed capital. Defendants repeatedly and intentionally misrepresented the true nature of the investment to Plaintiffs, to induce them to invest so that Defendants could use the investment funds for their own personal uses as alleged above.  Defendants' scienter is further demonstrated by Defendants' concealment of their fraud, and repeated assurances that the investment was "zero risk."

84.     As a direct and proximate result of Defendants' wrongful conduct and violations of section 517.301, Plaintiffs suffered damages in connection with the purchase of preferred

membership interests in TRC Funding. As alleged herein, each defendant personally participated in the fraudulent sale of units in TRC Funding to Plaintiffs, and therefore defendants are jointly and severally liable to Plaintiffs pursuant to section 517.211(2).

85.     Plaintiffs are entitled to recover prevailing party attorney fees under section 517.211(6), Florida Statutes.

86.     Defendants' conduct was willful, malicious, oppressive, and/or reckless, and was of such nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for damages, including punitive damages, attorneys' fees, costs and any further relief this Court deems proper.

## Count III
### Fraud in the Inducement

87.     Plaintiffs reallege paragraphs 1–57.

88.     As set forth above, Defendants employed a fraudulent scheme whereby their misrepresentations and omissions of material facts to Plaintiffs relating to the offer and sale of the Units of TRC Funding as set forth in the private placement memorandum induced Plaintiffs to invest more than $3 million in TRC Funding.   Defendants owed Plaintiffs a duty to ensure that full and fair disclosures were made in connection with the securities offered to Plaintiffs in the private placement memorandum.

89.     Defendants' intentional misrepresentations included, but were not limited to: (1) that BASL had a docket of approximately 15,000 cases; (2) that settlement proceeds from these cases would be available to redeem the preferred units of membership in TRC Funding within one year; (3) that investment in TRC Funding would generate substantial returns on Plaintiffs'

investments; (4) that the Group had developed a system to generate a return of more than 240% on Plaintiffs' investments within 12 months;  (5) that Plaintiffs' investments in TRC Funding would be used to fund litigation of products liability cases for clients of Bramzon and BASL; (6) they would guarantee that TRC Funding would redeem the units as set forth in the private placement memorandum, and that the Plaintiffs would otherwise be paid back; and (7) that the cases would generate tens of millions of dollars in the next year, the same to be realized by Plaintiffs.

90.     Defendants' intentional material omissions included, but were not limited to: (1) that Defendant David Hammer had been disbarred; (2) that Defendant Mitch Hammer had been criminally convicted of violating securities laws and would be involved in the management of TRC Funding; (3) that TRC Funding's assets were substantially encumbered; and (4) that a former vendor's claims against TRC Funding would affect TRC Funding's ability to perform its financial obligations.

91.     Defendants' material representations to Plaintiffs were untrue, and Defendants' omissions of material facts were necessary so that Defendants' misrepresentations to Plaintiffs appeared to be not misleading.

92.     The Defendants' untrue statements of material facts and omissions/concealment alleged herein regarding the true nature of the investment were made with the intention of inducing, and did thereby induce, Plaintiffs to purchase the units of TRC Funding. Defendants then used use the investment funds for their own personal uses as alleged above.

93.     Defendants knew that Plaintiffs relied upon their material misrepresentations and omissions in making the decision to invest millions of dollars in TRC Funding.

94.     In reasonable reliance on Defendants' misrepresentations and concealment, Plaintiffs invested over three million dollars ($3,000,000.00) in units of TRC Funding in 2017 and 2018, as follows:

    a.  Plaintiff Kevin Friedman: $875,000.00

    b.  Plaintiff Vijay Patel: $1,000,000.00

    c.  Plaintiff George Skaff: $100,000.00

    d.  Plaintiff Michael Schoeff: $750,000.00

    e.  Plaintiff Jonathan Schoeff: $400,000.00

95.     Plaintiffs would not have agreed to purchase the securities and invest in TRC Funding if Plaintiffs had been aware of the lack of truthfulness in Defendants' misleading statements and failure to disclose material facts.

96.     Due to Plaintiffs' reliance on Defendants' representations and omissions, Plaintiffs have suffered damages.

97.     Defendants' conduct was willful, malicious, oppressive, and/or reckless, and was of such nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for damages, including punitive damages, attorneys' fees, costs and any further relief this Court deems proper.

### Count IV
### Negligent Misrepresentation

98.     Plaintiffs reallege paragraphs 1-57.

99.     As set forth above, Defendants employed a fraudulent scheme whereby their misrepresentations and omissions of material facts to Plaintiffs relating to the offer and sale of

the Units of TRC Funding as set forth in the private placement memorandum induced Plaintiffs to invest more than $3 million in TRC Funding.   Defendants owed Plaintiffs a duty to ensure that full and fair disclosures were made in connection with the securities offered to Plaintiffs in the private placement memorandum.

100.   Defendants' intentional and/or negligent misrepresentations included, but were not limited to: (1) that BASL had a docket of approximately 15,000 cases; (2) that settlement proceeds from these cases would be available to redeem the preferred units of membership in TRC Funding within one year; (3) that investment in TRC Funding would generate substantial returns on Plaintiffs' investments; (4) that the Group had developed a system to generate a return of more than 240% on Plaintiffs' investments within 12 months;  (5) that Plaintiffs' investments in TRC Funding would be used to fund litigation of products liability cases for clients of Bramzon and BASL; (6) they would guarantee that TRC Funding would redeem the units as set forth in the private placement memorandum, and that the Plaintiffs would otherwise be paid back; and (7) that the cases would generate tens of millions of dollars in the next year, the same to be realized by Plaintiffs.

101.   Defendants' intentional and/or negligent material omissions included, but were not limited to: (1) that Defendant David Hammer had been disbarred; (2) that Defendant Mitch Hammer had been criminally convicted of violating securities laws and would be involved in the management of TRC Funding; (3) that TRC Funding's assets were substantially encumbered; and (4) that a former vendor's claims against TRC Funding would affect TRC Funding's ability to perform its financial obligations.

102.    Defendants knew or should have known that their material representations to Plaintiffs were untrue, and Defendants' omissions of material facts were necessary so that Defendants' misrepresentations to Plaintiffs appeared not to be misleading.

103.    The Defendants' untrue statements of material facts and concealment alleged herein regarding the true nature of the investment were made with Defendants' knowledge of their falsity, or under circumstances in which Defendants ought to have known of their falsity. Defendants intended to induce, and did thereby induce, Plaintiffs to purchase the units of TRC Funding. Defendants then used use the investment funds for their own personal uses as alleged above.

104.    Defendants knew that Plaintiffs relied upon their material misrepresentations and omissions in making the decision to invest millions of dollars in TRC Funding.

105.    In reliance on Defendants' misrepresentations and concealment, Plaintiffs invested over three million dollars ($3,000,000.00) in units of TRC Funding in 2017 and 2018, as follows:

     a.   Plaintiff Kevin Friedman: $875,000.00

     b.   Plaintiff Vijay Patel: $1,000,000.00

     c.   Plaintiff George Skaff: $100,000.00

     d.   Plaintiff Michael Schoeff: $750,000.00

     e.   Plaintiff Jonathan Schoeff: $400,000.00

106.    Plaintiffs would not have agreed to purchase the securities and invest in TRC Funding if Plaintiffs had been aware of the lack of truthfulness in Defendants' misleading statements and failure to disclose material facts.

107.    Due to Plaintiffs' reliance on Defendants' negligent representations and omissions, Plaintiffs have suffered damages.

108.    Defendants' conduct was willful, malicious, oppressive, and/or reckless, and was of such nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for damages, including punitive damages, attorneys' fees, costs and any further relief this Court deems proper.

### Count V
### Breach of Guaranty (on behalf of Plaintiff Kevin Friedman against Defendant Mitchell Hammer)

109.    Plaintiffs reallege paragraphs 1-57.

110.    In consideration for Kevin Friedman's investment in TRC Funding, Defendant Mitchell Hammer personally guaranteed TRC Funding's performance to Kevin Friedman under the private placement memorandum.

111.    Defendant Mitchell Hammer breached the Guaranty by failing to guarantee TRC Funding's performance.

112.    As a result of Defendant Mitchell Hammer's breach of the Guaranty, Plaintiff Kevin Friedman has suffered damages.

WHEREFORE, Plaintiff Kevin Friedman demands judgment against Defendant Mitchell Hammer for damages, interest, costs, attorney fees, and any further relief this Court deems proper.

<u>**Count VI**</u>
<u>**Breach of Guaranty (on behalf of Plaintiff Michael Schoeff against**</u>
<u>**Defendants Ghen Sugimoto, Mitchell Hammer and David Hammer)**</u>

113.    Plaintiffs reallege paragraphs 1-57.

114.    In consideration for Michael Schoeff's investment in TRC Funding, Defendants Ghen Sugimoto, Mitchell Hammer and David Hammer personally guaranteed and assumed full responsibility for TRC Funding's performance to Michael Schoeff under the private placement memorandum under the terms set forth in the Guaranty.

115.    Under the Guaranty, Ghen Sugimoto, Mitchell Hammer and David Hammer further agreed to pay all expenses, including attorneys' fees and court costs, arising out of any action, litigation or proceeding instituted to enforce the terms and conditions of the Guaranty.

116.    Defendants Ghen Sugimoto, Mitchell Hammer and David Hammer breached the Guaranty by failing to notify Michael Schoeff of additional debt incurred by TRC Funding, and by failing to guarantee TRC Funding's performance.

117.    As a result of Defendants' breach of the Guaranty, Plaintiff Michael Schoeff has suffered damages.

118.    Under the Guaranty, Defendants Ghen Sugimoto, Mitchell Hammer and David Hammer agreed to pay Michael Schoeff "all expenses" arising out of any action, litigation or proceeding to enforce the terms of the Guaranty, including but not limited to court costs and all attorneys' fees incurred by Michael Schoeff.

WHEREFORE, Plaintiff Michael Schoeff demands judgment against Defendants Ghen Sugimoto, Mitchell Hammer and David Hammer for damages, interest, costs, attorney fees, and any further relief this Court deems proper.

<u>**Count VII**</u>
<u>**Conversion**</u>

119.   Plaintiffs reallege paragraphs 1- 57.

120.   Plaintiffs owned and had the right to possession of the $3,125,000.00 invested in TRC Funding due to Defendants' fraudulent actions.

121.   Defendants, on information and belief, for their own self-interests and on behalf of TRC Funding and Smart Legal, took possession of these specific funds.

122.   Plaintiffs have demanded the return of these specific funds from Defendants.

123.   Through their actions, Defendants have wrongfully deprived Plaintiffs of these specific funds.

124.   Despite demands by Plaintiffs, Defendants have refused to return these specific funds to Plaintiff.  Rather, Defendants have diverted Plaintiffs' funds for their own personal use and benefit.

125.   Plaintiffs, as a result of Defendants' conduct, have suffered damages.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages, attorney's fees, costs and any further relief this Court deems proper.

## Count VIII
## Accounting

126.   Plaintiffs reallege paragraphs 1–57.

127.   As set forth above, the transactions between Plaintiffs and Defendants in the offer and sale of Units in TRC Funding are complex because they involve numerous individuals, entities and accounts, and involve the diversion of Plaintiffs' investment funds.  As further alleged above, Defendants have not used Plaintiffs' investment to fund product liability litigation as represented, but have diverted the funds to various accounts and entities, to pay other debts or for their personal use.

128.    Plaintiffs are not aware of and have no way of verifying where their investment funds were diverted. Plaintiffs are without an adequate remedy at law and require an equitable accounting from Defendants as payments, disbursements and/or distributions of their invested funds.  Plaintiffs are further entitled to an accounting as to Defendants' possession, use, and conversion of all monies invested in TRC Funding by Plaintiffs, and to determine where their investment funds were diverted.

WHEREFORE, Plaintiffs respectfully request an Order of this Court requiring a full equitable accounting as to their investment funds, and other such relief as the Court deems just and necessary.

### Prayer for Relief

WHEREFORE, Plaintiffs respectfully request that this Court:

(a)    Enter Judgment for Plaintiffs and against Defendants as to each Count of this Complaint;

(b)    Award Plaintiffs actual, incidental and consequential damages in an amount to be proven at trial;

(c)    Award Plaintiffs punitive damages against the Defendants;

(d)    Award all reasonable costs incurred by Plaintiffs in connection with this Action, including attorneys' fees pursuant to applicable law;

(e)    Order an equitable accounting of all funds invested by Plaintiffs into TRC Funding; and

(f)    Award such other relief as the Court deems just and proper.

### Demand for Jury Trial

Plaintiffs demand trial by jury on all issues so triable.

WEINBERG, WHEELER,
HUDGINS, GUNN & DIAL, LLC


*/s/ Aaron M. Cohn*
Aaron M. Cohn
Florida Bar No. 95552

2601 South Bayshore Dr., Suite 1500
Miami, FL 33133
Ph.  (305) 455-9500
Fax (305) 455-9501
acohn@wwhgd.com

*Attorney for Kevin Friedman, Vijay Patel,*
*Jonathan Schoeff, Michael Schoeff and*
*George Skaff*