UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 0:19-cv-62481-PCH

KEVIN FRIEDMAN, VIJAY PATEL,
JONATHAN SCHOEFF, MICHAEL SCHOEFF,
and GEORGE SKAFF,

       Plaintiff,

v.

DAVID HAMMER; MITCHELL HAMMER;
GHEN SUGIMOTO; DIANE SUGIMOTO;
TRC FUNDING GROUP NO. 1 LLC; and
SMART LEGAL SOLUTIONS, LLC,

       Defendants.
_____/

## DEFENDANT, DIANE SUGIMOTO'S MOTION FOR TO SEVER PLAINTIFF KEVIN FRIEDMAN AND HIS CLAIMS PURSUANT TO FED.R.CIV.P 21

NOW COMES the Defendant, Diane Sugimoto, by and through undersigned Counsel and seeks an order severing Plaintiff, Kevin Friedman and his claims from this matter and the Defendant further states unto this Honorable Court in support of her motion.

### FACTS

Currently this matter is being prosecuted by Plaintiffs Dr. Kevin Friedman, DO, Dr. Vijay Patel, MD, Dr. Jonathan Schoeff, MD, Michael Schoeff and George Skaff. The original complaint alleged a common thread of allegations of wrongful conduct purportedly shared equally among all the Defendants. On March 5, 2020 the Plaintiffs moved to amend their complaint to add two additional claims and subtract the claim for conversion.

For the purposes of this motion, the only allegations contained in the First Amended Complaint that are at issue ¶33 and ¶34 which state in their entirety:

> 33. Defendants David Hammer, Mitchell Hammer, Diane Sugimoto and Ghen Sugimoto, in their own self-interests and on behalf of Defendants Smart Legal and TRC Funding represented to Plaintiffs that Defendant David Hammer earned a Juris Doctorate and Master of Laws in Taxation from University of Florida and that his four years of law practice led him to a career in business. Defendants failed to disclose that in Defendant David Hammer's four years of law practice he was once reprimanded, twice suspended, and ultimately disbarred by the Florida Bar.
>
> 34. Defendants David Hammer, Mitchell Hammer, Diane Sugimoto and Ghen Sugimoto, in their own self-interests and on behalf of Defendants Smart Legal and TRC Funding, failed to disclose to Plaintiffs at the time of their investments that Defendant David Hammer's father, Defendant Mitch Hammer, had been criminally convicted of violating securities laws and would be involved in the management of TRC Funding.

See Amended Complaint, pg. 8.

After Dr. Friedman learned of the investment opportunity, he set out, voluntarily, to solicit others to invest and is responsible for soliciting the other four Plaintiffs in this matter. In addition to being a securities dealer for hire, Dr. Friedman, given his medical background, also was employed by The Record Company to consult on matters concerning medical records review and other consulting with Dr. Friedman's training and experience. (Exhibit "A"). In addition to consulting on medical records related to the TVM cases, Dr. Friedman was also compensated $112,500.00[1] in the form of a dealer's commission[2] by a sister company of Defendant, TRC Funding Group No. 1, LLC for Dr. Friedman's unlicensed efforts to obtain new investors. (Exhibit "B", pg. 21[3]). According to Michael Schoeff, he was not happy about Dr. Friedman's conduct but did believe that Dr. Friedman did attempt to conceal it by discouraging the investors from taking legal action. (Exhibit "C"), pg. 37, ln. 10-22).

In addition to not disclosing his independent contractor status to those whom he recruited, he also failed to disclose what the other plaintiffs allege was material information. According to ¶54 Complaint:

---

[1] In his communications, Dr. Friedman would refer to this transaction and the compensation as "dirty"
[2] Fl. State 517. 021(6)(a)  "Dealer" includes any of the following:
1. Any person, other than an associated **person registered under this chapter**, who engages, either for all or part of her or his time, directly or indirectly, as broker or principal in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person. Possibly subject to liability under Fl. Stat. 512.211. as an unlicensed dealer and as a control person.
[3] Page numbers reference in the exhibits refers to the bates number located in the bottom right corner of the pages.

2

> 54. During or around the spring of 2017, after investing in TRC Funding, Plaintiff Kevin Friedman learned that Defendant David Hammer had been disbarred after only four years of practicing law, and that Defendant Mitchell Hammer had been convicted of violating securities laws. . .

See First Amended Complaint pg. 13.  The Plaintiffs allege that:

> 55. The criminal and unethical backgrounds of Defendants David Hammer and Mitchell Hammer were material facts that would have substantially impacted Plaintiffs' decision to invest in TRC Funding, especially given that the criminal conduct involved securities fraud.

See Amended Complaint, pg, 14 ¶55. Dr. Friedman further admits in his deposition that he learned those facts after his $600,000.00 investment which was in April of 2017. (Exhibit "B", pg. 12, ln. 1 -6).  See also Amended Complaint pg. 10, ¶43(a).  However, during discovery, Defendant Diane Sugimoto produced a text message among Dr. Friedman, Defendant Diane Sugimoto, and Defendant Ghen Sugimoto, dated five months after his discovery of the disbarment and conviction, August 28, 2017, wherein Dr. Friedman indicated that he had a good conversation with both Mitch and David Hammer about the disbarment and conviction and that he had determined – "Feel good about everything. If you agree I don't think it's necessary to speak to the this to the other guys since it does not impact the investment.  If they [the other guys] happen to ever find out on their own, which I don't anticipate, I will just say I was not aware and we can discuss as we did today" wherein Ghen Sugimoto replied, "Good to hear. They are good people".  Dr. Freidman agreed with that assessment.  Further down in the text Dr. Friedman further states "Yes it was a good idea to talk.  Loren felt good about it as well"[4] (Exhibit "D").  It is noteworthy that during the twenty (20) months that Dr. Friedman withheld the, so called "material" information from his Co-Plaintiffs;  he himself invested and additional twenty-five thousand dollars ($25,000.00), Plaintiff Vijay Patel invested one-million dollars ($1,000,000.00), Plaintiff, Michael Schoeff invested four-hundred thousand dollars, and ($400,000.00) and Plaintiff George Skaff invested one-hundred thousand dollars ($100,000.00).

---

[4] "Loren" is Dr. Friedman's wife at this time, but at the time of the text exchange, according to his deposition testimony, she was acting as his lawyer related to the investment and therefore claimed Attorney Client Privilege as to the conversation that under pins the statement "Loren felts good about it as well". See Exhibit "D" pg. 13, ln. 1-8

Plaintiff George Skaff, in his deposition, was unequivocal that had he known about Defendant, Mitchell Hammer's prior conviction he would have not, under any circumstance, participated in the investment. (Exhibit "E", pg. 57 – 60).

## ARGUMENT

Fed.R.Civ.P 21 states: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."  This rule has been interrupted to allow the Court to sever a party and its claims from others for various reason:

> Rule 21 of the Federal Rules of Civil Procedure provides that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Similarly, a district court has broad discretion in deciding whether to sever a party or claim pursuant to Rule 21. Although Rule 21 is most commonly invoked to sever parties improperly joined under Rule 20, "the Rule may also be invoked to prevent prejudice or promote judicial efficiency." *Lopez v. City of Irvington*, 2008 WL 565776, *2 (D.N.J. 2008); see also *Sporia v. Pennsylvania Greyhound Lines, Inc*., 143 F.2d 105 (3d Cir. 1944) (not limiting Rule 21 severance to cases of misjoinder); *Wyndham Assoc. v. Bintliff,* 398 F.2d 614 (2d Cir.) (same, citing Sporia )

*Zamichieli v. Delbalso* (M.D. Pa. 2018).

The facts in this matter are analogous to those in *Sporia v. Pennsylvania Greyhound Lines, Inc*. The fact pattern in *Sporia* is the classic scenario in which driver and passenger in a motor vehicle get into an accident with another vehicle and both are injured.  Driver and passenger jointly sue the driver of the bus that hit them and his corporate employer.  The bus company attempted to assert a third-party claim against the driver of the automobile; however, the driver of the automobile cannot be brought in by way of third-party complaint because Fed.R.Civ.P 14 requires that the Third Party be a "non-party" to the action.  The Third Circuit Court of Appeals in *Sporia*, found that even through the two actions were nearly identical in facts and law, that –

> It has already been recognized that where plaintiffs having separate causes of action join as co-plaintiffs, the defendant may obtain a severance of the claim of one of the plaintiffs in order to join him thereafter as an additional defendant as to the claim of the remaining

4

> plaintiffs. Such a severance is proper in order to protect the defendant from being deprived of the procedural right of joinder to which he would be entitled had the severed plaintiff not joined as a co-plaintiff. Otherwise the right to join him as an additional defendant would depend upon the chance circumstance that he had not joined as a co-plaintiff.

*Sporia v. Pennsylvania Greyhound Lines*, 143 F.2d 105, 107 (3rd Cir. 1944).

In this matter the Plaintiffs jointly have pled that the failure to disclose the disbarment and criminal conviction were material omissions, and that had those facts been known, the Plaintiffs would not have invested. In fact, the, the Plaintiffs in their complaint repeat several times: "Plaintiffs would not have agreed to purchase the securities and invest in TRC Funding but for Defendants' misleading statements and failure to disclose material facts." See Amended Complaint ¶70, ¶91, ¶104, ¶115.

Clearly, the term "Plaintiffs" in reference to ¶33 and ¶34 does not include Dr. Friedman who admits to knowing about the disbarment and conviction in the spring of 2017, did not address any of his concerns until five months later when he spoke to Defendants Mitch and David Hammer, determined with the advice of counsel that the non-disclosure was not material and had no effect on the investment. (Exhibit "D") and subsequently invested additional money. Further he not only agreed to keep it to himself, he indicated he would lie to the other investors who he recruited and was compensated for if they discovered the omissions on their own. The fact is, none of the other investors found out from Dr. Friedman, but rather found out from an Attorney in late 2018, whom they all consulted with and who jointly represented them in the Tampa matter.

## CONCLUSION

Diane Sugimoto's[5] ability to properly defend in this matter is severely prejudiced by her inability to bring a third-party complaint against Dr. Friedman in the suit by the other four plaintiffs. If she could bring such a claim, she would, in summary, allege that to the extent she is liable to those four plaintiffs,

---

[5] And some of the other Defendants as well would also be prejudiced by the inability to join Dr. Friedman as a third-party defendant.

Dr. Friedman should be liable to her, because he was an unlicensed securities dealer who solicited those plaintiffs, knew about the alleged omissions, and chose to make those omissions to those investors.[6] Dr. Friedman and his attorney wife are a common thread among the Plaintiffs' investments which took place through 2017 and into early 2018.  The Court rules are for the benefit of all the parties, and the Defendants should not be excluded from full use of Rule 14 just because the Plaintiffs chose to, tactically, band together to insulate Dr. Friedman from scrutiny by a trier of fact for his own alleged fraudulent conduct which, if a trier of fact so determined, includes liability under Counts I, II, III, IV and V of the complaint.

WHEREFORE, the Defendant, Diane Sugimoto, respectfully requests that this Court grant the motion to sever Plaintiff, Dr. Kevin Friedman, DO and his claims from the claims of the other four Plaintiffs, and allow Defendant 14 days after her motion to dismiss is adjudicated to file a third-party complaint in this action against Dr. Friedman and others, as may be appropriate, and for any other relief that the Court deems equitable.

By: /s/ Paul DeCailly\
Paul DeCailly, Esq.\
FLBN: 796301\
DECAILLY LAW GROUP, P.A.\
PO Box 490\
Indian Rocks Beach, FL 33785\
(727) 824-7709\
pdecailly@dlg4me.com

**CERTIFICATE OF COMPLIANCE**

In accordance with Local Rule 7.1, the undersigned attorney certify that he has conferred with Counsel for the Plaintiffs regarding the issues raised in this motion by email and telephone conference on March 30, 2020, and with counsel for Defendants TRC Funding Group No. 1, LLC.  Counsel for Plaintiffs opposes this motion, but counsel for Defendants and pro se Defendant support it.

---

[6] Dr. Vijay Patel is a Florida resident which implies a violation of FL. Statute 517 et seq.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I served a true and correct copy of the foregoing on this 30th day of March, 2020, upon all counsel of record via the Court's CM/ECF System and unrepresented parties by e-mail.

        Respectfully submitted,

        /s/ Paul DeCailly
        Paul DeCailly